**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**WAEL F. ALZAWAHRA,**

                    **Plaintiff,**

                                                            **11-CV-227**

            **v.**

**ALBANY MEDICAL CENTER, DAVID**
**JOURD'HEUIL and HAROLD A. SINGER,**

                    **Defendants.**
_____

**THOMAS J. McAVOY,**
**Senior United States District Judge**

**DECISION & ORDER**

## I.    INTRODUCTION

Plaintiff Wael F. Alzawahra commenced this action *pro se* asserting that he was

subjected to a hostile work environment, treated in a disparate fashion regarding terms

and conditions of employment, and terminated from his employment based on

consideration of his national origin, in violation of Title VII of the Civil Rights Act ("Title VII")

and New York Executive Law § 290, *et seq*. ("NY Human Rights Law").  See Am. Comp. ¶

2.  Defendants Albany Medical Center, David Jourd'heuil, and Harold A. Singer

("Defendants") now move for summary judgment seeking to dismiss Plaintiff's claims in

their entirety.  Dkt. # 23.  Plaintiff filed a late response to the motion, dkt. # 41, but the

response fails to comply with the Local Rules in that it fails to provide any legal argument

1

in opposition to the motion; fails to constitute a proper response to Defendants' Statement of Material Facts; and fails to provide any admissible evidence in opposition to the motion. Id.[1]  For the reasons that follow, the motion is granted.

## II.      STANDARD OF REVIEW

The Court may grant summary judgment where "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(a).  A dispute is genuine if the relevant evidence is such that a reasonable jury could return a verdict for the nonmoving party.  Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986).  A party seeking summary judgment bears the burden of informing the court of the basis for the motion and of identifying those portions of the record that the moving party believes demonstrate the absence of a genuine issue of material fact as to a dispositive issue. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

If the movant is able to establish a *prima facie* basis for summary judgment, the burden of production shifts to the party opposing summary judgment who must produce evidence establishing the existence of a factual dispute that a reasonable jury could resolve in his favor. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).  The nonmoving party must show, by affidavits or other evidence, admissible in form, that there are specific factual issues that can only be resolved at trial. Colon v. Coughlin, 58 F.3d 865, 872 (2d Cir. 1995).  "[P]roceeding *pro se* does not otherwise relieve a litigant from the usual requirements of summary judgment." Viscusi v. Proctor & Gamble, 2007 WL 2071546, at * 9 (E.D.N.Y. July 16, 2007).

_____

[1]The document is a unsigned and unverified, fails to contain any legal citations or arguments, and appears to be a series of factual assertions by Plaintiff.

2

In determining whether to grant summary judgment, the Court must view all facts in the light most favorable to the nonmoving party, but "only if there is a 'genuine' dispute as to those facts." Scott v. Harris, 127 S. Ct. 1769, 1776 (2007). The nonmoving party cannot defeat summary judgment by "simply show[ing] that there is some metaphysical doubt as to the material facts," Matsushita., 475 U.S. at 586, or by a factual argument based on "conjecture or surmise." Bryant v. Maffucci, 923 F.2d 979, 982 (2d Cir. 1991). In this regard, a party opposing a properly supported motion for summary judgment may not rest upon "mere allegations or denials" asserted in the pleadings, Rexnord Holdings, Inc. v. Bidermann, 21 F.3d 522, 525-26 (2d Cir. 1994), or on conclusory allegations or unsubstantiated speculation. Scotto v. Almenas, 143 F.3d 105, 114 (2d Cir. 1998).

The Local Rules of the Northern District require a party moving for summary judgment to submit a "Statement of Material Facts" which sets forth, with citations to the record, each material fact about which the moving party contends there exists no genuine issue. N.D.N.Y.L.R. 7.1(a)(3). Once a properly supported Local Rule 7.1(a)(3) Statement is submitted, the party opposing the motion must

> file a response to the [movant's] Statement of Material Facts. The non-movant's response shall mirror the movant's Statement of Material Facts by admitting and/or denying each of the movant's assertions in matching numbered paragraphs. Each denial shall set forth a specific citation to the record where the factual issue arises. The non-movant's response may also set forth any additional material facts that the non-movant contends are in dispute in separately numbered paragraphs. Any facts set forth in the Statement of Material Facts shall be deemed admitted unless specifically controverted by the opposing party.

Id. (underscoring in original).

The responding Statement of Material Facts is not a mere formality, and the courts apply this rule strictly. See N.Y. Teamsters Conference Pension & Ret. Fund v. Express

3

Servs., Inc._, 426 F.3d 640, 648-49 (2d Cir. 2005)(upholding grant of summary judgment where "[t]he district court, applying Rule 7.1(a)(3) strictly, reasonably deemed [movant's] statement of facts to be admitted" because the non-movant submitted a responsive Rule 7.1(a)(3) statement that "offered mostly conclusory denials of [movant's] factual assertions and failed to include any record citations."); Gubitosi v. Kapica_, 154 F.3d 30, 31 n. 1 (2d Cir. 1998)(_per curiam_)(accepting as true material facts contained in unopposed local rule statement of material facts); Meaney v. CHS Acquisition Corp., 103 F. Supp.2d 104, 108 (N.D.N.Y. 2000)(deeming movant's Rule 7.1(a)(3) Statement admitted where non-movant's response "set forth _no_ citations – specific or otherwise – to the record")(emphasis in original); McKnight v. Dormitory Auth. of State of N.Y., 189 F.R.D. 225, 227 (N.D.N.Y. 1999)(McAvoy, J.)("deem[ing] the portions of Defendants' 7.1(a)(3) statement that are not specifically controverted by Plaintiff to be admitted"); Osier v. Broome County, 47 F. Supp.2d 311, 317 (N.D.N.Y. 1999) (McAvoy, J.)(deeming admitted all facts in defendants' Rule 7.1(a)(3) statement where "plaintiff submitted thirteen pages of purported facts without any indication where those facts can be located in the record").

While the Court must construe a _pro se_ litigant's pleadings and papers liberally and interpret them to raise the strongest arguments that they suggest, Govan v. Campbell, 289 F. Supp.2d 289, 295 (N.D.N.Y. 2003);[2] Veloz v. New York, 339 F. Supp.2d 505, 513 (S.D.N.Y. 2004), the application of this lenient standard does not relieve a _pro se_ litigant of the requirement to follow the procedural formalities of Local Rule 7.1(a)(3). Govan, 289 F. Supp.2d at 295; see also Faretta v. California, 95 S. Ct. 2525, 2541 n. 46 (1975)("The

---

[2] To construe pleadings liberally means the Court must view the submissions by a more lenient standard than that accorded to "formal pleadings drafted by lawyers." Govan, 289 F. Supp.2d at 295.

right of self-representation is not a license . . . not to comply with relevant rules of procedural and substantive law."); <u>Edwards v. INS</u>, 59 F.3d 5, 8 (2nd Cir. 1995)("While a *pro se* litigant's pleadings must be construed liberally, . . . *pro se* litigants generally are required to inform themselves regarding procedural rules and to comply with them.").

## III.    BACKGROUND

Plaintiff has not submitted an opposing Statement of Material Facts despite being advised of this obligation.[3]  Accordingly, the properly supported facts set forth in Defendant's Statement of Material Facts are deemed admitted for purposes of this motion. N.D.N.Y.L.R. 7.1(a)(3).  The following facts are taken from Defendant's Statement of

---

[3]Plaintiff was served with the Northern District's standard summary judgment notification for *pro se* litigants, <u>see</u> dkt. # 28. This notification provided, *inter alia*,

The defendants have moved for **summary judgment** under Federal Rule of Civil Procedure 56.  A motion for summary judgment asks the Court to make a final judgment dismissing some or all of your claims. If you do not file a proper response to this motion, the Court may grant the motion **and dismiss some or all of your claims**. Under Local Rule 7.1 (a), to file a proper response to this motion, you must submit the following papers:

(1)    A **response to the defendants' statement of material facts** that admits and/or denies each of the defendants' assertions in matching numbered paragraphs, and that supports each denial with citations to record evidence;

(2)     Copies of all **record evidence** that you cite in your response to the defendants' statement of material facts; **AND**

(3)    A response memorandum of law (no more than 25 pages long and formatted in compliance with Local Rule 10.1) that responds to each of the legal arguments contained in the defendants' memorandum of law, and that contains any additional legal arguments you may have in response to the defendants' motion for summary judgment.

**WARNING:** If you do not submit a proper response to the defendants' statement of material facts, **the Court may deem you to have admitted the defendants' factual statements**. If you do not submit copies of record evidence in support of your denials**, the Court may deem defendants' factual statements to be true**. If you do not submit a proper response memorandum of law, **the Court may deem you to have conceded the defendants' arguments**.  If you do not respond to this motion properly (or at all), summary judgment may be entered against you, meaning that **SOME OR ALL OF YOUR CLAIMS MAY BE DISMISSED.**

Dkt. # 28 (emphasis in original, footnotes omitted)**.**

Facts Not In Dispute ("SOF").

Defendant Albany Medical Center ("AMC") is a non-profit corporation consisting of a teaching hospital and medical college with biomedical research facilities.  AMC has approximately 7,000 employees.  Dr. Jourd'heuil is employed by AMC as an Associate Professor for Cardiovascular Sciences.  Dr. Harold A. Singer is employed by AMC as a Professor and Director of the Center for Cardiovascular Services (the "Center").  Both Dr. Jourd'heuil and Dr. Singer run research laboratories ("labs") in the Center. SOF  ¶¶ 1-3. Plaintiff was employed at AMC as a full-time post-doctoral fellow for a one-year term in the Center for Cardiovascular Sciences beginning on June 18, 2008 and ending on July 17, 2009. SOF ¶¶ 10-13.  In that position, Plaintiff worked in support of the research being undertaken by Dr. Singer and Dr. Jourd'heuil's research laboratories ("labs"). SOF ¶ 5. Plaintiff accepted the one-year post doctoral position with knowledge of the nature and limitations of the Center's commitment. SOF ¶ 14. There was no written agreement or contract to employ Plaintiff for longer than one year or to condition renewal of Plaintiff's one-year term solely on the basis of satisfactory performance. SOF ¶ 15.

Plaintiff was hired to work primarily in Dr. Jourd'heuil's lab in collaboration with Dr. Jourd'heuil, his wife, Fran Jourd'heuil, and pre-doctoral research assistant Katherine Halligan.  During this time, Plaintiff was treated as a typical post-doctoral fellow. He was consistently assigned work appropriate for his level of experience and expertise related to Dr. Jourd'heuil's ongoing research projects, including work on the cytoglobin project. SOF ¶¶ 17, 19.  Part of Plaintiff's duties included generating tissue samples by performing animal surgeries for use in Dr. Jourd'heuil's lab as well as other labs in the Center. SOF ¶ 20.  Plaintiff was made aware that the samples he generated would be used by other labs

at the Center, and that he would be credited for his work by being listed as a co-author if the samples he harvested were used in connection with any publications submitted by other labs. In fact, when his samples were used in a paper published by another lab, Plaintiff was named as a co-author. SOF ¶¶ 20-21.

During the course of his employment at AMC, Plaintiff never made any complaints of discrimination or harassment on the basis of his national origin, even though he received AMC's policy prohibiting such conduct and which sets forth the proper avenues of complaint. SOF ¶ 22. Plaintiff made only informal reports about incidents he experienced with broken and missing equipment in Dr. Jourd'heuil's lab, but never gave any indication he believed the incidents resulted from harassment or discrimination. SOF ¶¶ 55-56. The frequency of the mishaps occurring to Plaintiff's experiments was no more than occurred for others and typical for the types of experiments being performed. SOF ¶ 56. All broken or missing lab equipment was promptly replaced or repaired and Plaintiff was able to timely complete his assignments. SOF ¶ 57. Plaintiff never identified what caused the incidents or who was responsible and acknowledged the incidents could have been merely accidental. SOF ¶¶ 58-61.  Plaintiff also now makes harassment allegations concerning a flat tire in the AMC parking garage, a piece of raw meat at the front door of his home, and several hang-up phone calls from unknown callers (Am. Comp. ¶ 23), but he admitted at his deposition that he does not know who is responsible for these incidents and does not have any basis to believe someone from AMC is responsible. SOF ¶ 62.

Dr. Jourd'heuil intended for Plaintiff to publish a manuscript based upon the data Plaintiff generated in Dr. Jourd'heuil's lab and gave him permission to write it. SOF ¶ 23. Dr. Jourd'heuil supported Plaintiff's efforts and willingly assisted him with this endeavor.

7

SOF ¶ 24. Plaintiff prepared a manuscript and Dr. Jourd'heuil reviewed it on more than one occasion.  Dr. Jourd'heuil also provided Plaintiff with extensive written feedback identifying what he perceived to be significant shortcomings with the supporting scientific data and quality of the writing. SOF ¶ 25.  Despite Dr. Jourd'heuil's efforts, Plaintiff admits that he did not revise the manuscript to address the comments made by Dr. Jourd'heuil. SOF ¶ 26.  Ultimately, Dr. Jourd'heuil did not approve Plaintiff's manuscript for submission because, in his professional opinion, the quality of the manuscript was not good enough to be competitive. SOF ¶¶ 27-30.  Specifically, Dr. Jourd'heuil opined that there were significant grammatical deficiencies with the writing in his presentation that would require the paper to be entirely rewritten to be submitted. SOF ¶ 27.  Further, the incomplete scientific data resulted in inconsistent conclusions, some of which repeated results that had already been published. SOF ¶ 28.  Moreover, the results of the experiments ultimately disproved Plaintiff's primary hypothesis, making it a "negative study."  With no published literature to justify the negative results, it would be extremely difficult to publish. SOF ¶ 29-30.

In or around September 2008, Dr. Jourd'heuil told Plaintiff to consider writing an American Heart Association ("AHA") grant. SOF ¶ 32.  When Plaintiff gave Dr. Jourd'heuil the supporting data for the grant application, however, it was incomplete. SOF ¶ 33. Plaintiff never completed the supporting research and never submitted a completed application. SOF ¶ 35.

Upon expiration of his one-year term, Plaintiff's employment was terminated effective July 17, 2009. SOF ¶ 37.  Dr. Singer and Dr. Jourd'heuil could not renew his position because the labs lacked sufficient funding to continue his position or the research

related to his specialized skill set. SOF ¶ 67.[4]  There was no written contract to renew

Plaintiff's position beyond the initial one-year term. SOF ¶¶ 15, 68.  Plaintiff is not the only

post-doctoral fellow to be employed for only one year, nor is Plaintiff the only employee to

be terminated from the Center due to lack of funding. SOF ¶ 16.

At the time the motion was submitted, no one had been hired to replace Plaintiff in

either Dr. Jourd'heuil or Dr. Singer's labs. The projects Plaintiff was working on in Dr.

Jourd'heuil's lab remained unfinished due to the lack of grant funding for that specific

research, and no one is performing the animal surgeries Plaintiff was doing in Dr. Singer's

lab. SOF ¶¶ 39-40.  At or near the time of Plaintiff's termination from AMC, there were no

open positions for senior post-doctoral fellows.  SOF ¶ 41. The Center did employ four

junior post-doctoral fellows in the month following Plaintiff's non-renewal, but Plaintiff did

not apply for these positions, nor did he have the requisite experience or skills for such

positions. SOF ¶ 72.  Since August 2009, the Center continues to employ post-doctoral

fellows of varying national origins. Defendants have no knowledge that Plaintiff has

applied for any of these positions or whether he was qualified for them. SOF ¶ 73.  Plaintiff

offered to stay on at AMC as a volunteer, but AMC declined his offer because of its policy

prohibiting an employee to volunteer to do the same work for which the employee had

previously been paid to ensure compliance with New York Labor Laws. SOF ¶ 43.

---

[4]Defendants assert that nearly all post-doctoral positions in the Center are largely funded through grant awards, and that continued employment depends upon continued receipt of grant funding for the specific project the researcher was hired to perform. Singer Aff. ¶ 16; see Alzawahra Dep. at 79-80.  Further, the undisputed evidence indicates that the funding for Plaintiff's position and research was set to expire at some point during, or immediately following, the expiration of his one-year term, and the sources of funding that had previously been supporting his salary were no longer available. Def. ex. "L"; Singer Aff. ¶¶ 23, 61-68; Jourd'heuil Aff. ¶¶ 17, 93. This evidence also indicates that the terms of the grants that were funding Dr. Jourd'heuil and Dr. Singer's labs at the time of Plaintiff's departure did not support the project Plaintiff was working on, or did not have enough unobligated funding to continue his position. Singer Aff. ¶¶ 63-68.

Defendants have not been contacted by any of Plaintiff's prospective employers seeking references, nor provided references to anyone concerning his employment at the Center. SOF ¶ 44.

On February 25, 2010, Plaintiff filed a Complaint with the New York State Division of Human Rights ("NYSDHR"), alleging that Defendants had discriminated against him on the basis of his national origin. The Complaint was dual-filed with the Equal Employment Opportunity Commission ("EEOC"). SOF ¶ 45.  Following its investigation, the NYSDHR determined there was no probable cause to believe that Defendants had engaged in the unlawful discriminatory practice complained of, stating in part that Defendants had "articulated legitimate, nondiscriminatory reasons for the actions taken" and, therefore, ordered a dismissal of the Complaint. SOF ¶ 46.

On October 1, 2010, Plaintiff filed a second Complaint with the NYSDHR, alleging national origin discrimination and retaliation. This Complaint was also dual-filed with the EEOC. SOF ¶ 47.  Following its investigation into Plaintiff's second Complaint, the NYSDHR determined there was no probable cause to believe that Defendants had engaged in the unlawful discriminatory practice complained of, and ordered a dismissal of the Complaint. SOF ¶ 48.  The EEOC adopted the findings of the SDHR with respect to both Complaints and issued a Dismissal and Notice of Rights for each, on December 7, 2010 and August 4, 2011, respectively. SOF ¶ 49.  This action followed.

**IV.     DISCUSSION**

**a.  NY Human Rights Law Claims - Election of Remedies**

New York Executive Law § 297(9) provides that "[a]ny person claiming to be

aggrieved by an unlawful discriminatory practice shall have a cause of action in any court

of appropriate jurisdiction . . . <u>unless</u> such person had filed a complaint hereunder." N.Y.

Exec. Law § 297(9)(emphasis added).  "[New York Executive Law § 297(9)] deprives

federal courts of subject matter jurisdiction where a plaintiff previously elected to proceed

in an administrative forum."  <u>Chudnovsky v. Prudential Sec., Inc.</u>, 2000 WL 1576876, at *4

(S.D.N.Y. Oct. 23, 2000).  Thus, "[o]nce a complainant elects the administrative forum by

filing a complaint with the Commission on Human Rights, that becomes the sole avenue of

relief, and subsequent judicial action on the same complaint is generally barred . . . ."

<u>Moodie v. Fed. Reserve Bank of N.Y.</u>, 58 F.3d 879, 884 (2d Cir.1995).[5]  "Furthermore,

once a plaintiff brings a case before the NYSDHR, he or she may appeal only to the

Supreme Court of the State of New York."  <u>York v. Ass'n of Bar of City of New York</u>, 286

F.3d 122, 127 (2d Cir. 2002) (citing N.Y. Exec. Law § 298).

Because Plaintiff's  NYSDHR Complaints were dismissed based on  findings of "no

probable cause," this Court lacks subject matter jurisdiction to consider Plaintiff's New

York Human Rights Law claims based on the same acts raised with the NYSDHR.  <u>Jones</u>

<u>v. Onondaga County Res. Recovery Agency</u>, 2011 WL 1298774, *6 (N.D.N.Y. Mar. 31,

2011);  <u>DeWald v. Amsterdam Housing Authority</u>, 823 F. Supp. 94, 99 (N.D.N.Y. 1993).

Accordingly, all NYSHRL claims asserted in this matter are dismissed.

---

[5]The exception to this rule is a dismissal for administrative convenience made before the
administrative agency renders a decision on the complaint.  This exception does not apply in this case.

**b.  Title VII Claims Against Jourd'heuil and Singer**

In the Second Circuit, "individuals are not subject to liability under Title VII."

Wrighten v. Glowski, 232 F.3d 119, 120 (2d Cir. 2000) (*per curiam*); see Tomka v. Seiler

Corp., 66 F.3d 1295, 1314 (2d Cir. 1995) *abrogated on other grounds*, Burlington Indus. v.

Ellerth, 524 U.S. 742 (1998).  Consequently, individuals may not be sued under Title VII

even in their capacities as supervisors. See Mandall v. Cnty. of Suffolk,316 F.3d 368,371

(2d Cir. 2003) ("[T]he district court's dismissal of plaintiff's Title VII claims against

Gallagher in his personal capacity must be affirmed because under Title VII individual

supervisors are not subject to liability."); Hawkins v. Cnty. of Oneida, N.Y., 497 F. Supp. 2d

362, 371 (N.D.N.Y.  2007) (holding in Title VII action that plaintiff was prohibited from

naming individual defendants in their official capacities); Bottge v. Suburban Propane, 77

F. Supp.2d 310, 313 (N.D.N.Y. 1999) (dismissing Title VII claim as against individuals in

their official capacities).  Thus, all remaining claims against David Jourd'heuil and Harold

A. Singer, brought under Title VII, are dismissed.

**c.  Discriminatory Discharge Claim**

Plaintiff alleges that he was discharged because of his national origin. Defendants

assert that Plaintiff's position was not renewed at the end of his one year contract because

of budgetary constraints and lack of funding for Plaintiff's position.

Claims alleging discriminatory discharge under Title VII based upon circumstantial

evidence of discrimination, such as is the case here, are analyzed using the

burden-shifting paradigm articulated in McDonnell Douglas Corp. v. Green, 411 U.S. 792

(1973).  Under this analysis, Plaintiff first bears the burden of setting out a *prima facie*

case of discrimination. See McDonnell Douglas, 411 U.S. at 802.  Plaintiff's burden of establishing a *prima facie* case is *de minimis.* Beyer v. County of Nassau, 524 F.3d 160, 163 (2d Cir. 2008).  If Plaintiff demonstrates a *prima facie* case, this gives rise to a presumption of unlawful discrimination and the burden of production shifts to Defendant to offer a legitimate, nondiscriminatory rationale for its actions. See McDonnell Douglas, 411 U.S. at 802–03.  Defendant's burden of production at this stage "is not a demanding one," Bickerstaff v. Vassar College, 196 F.3d 435, 446 (2d Cir. 1999), it need only offer a basis for the employment decision in issue which, "taken as true, would permit the conclusion that there was a nondiscriminatory reason for the adverse action." St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 509 (1993).

If Defendant proffers a legitimate, nondiscriminatory reason for the challenged action, "the presumption raised by the *prima facie* case is rebutted, and drops from the case." St. Mary's Honor Ctr., 509 U.S. at 507.  The burden shifts back to Plaintiff who "then has the opportunity to demonstrate that the proffered reason was not the true reason for the employment decision, and that [unlawful retaliation] was." Fisher v. Vassar College, 114 F.3d 1332, 1336 (2d Cir. 1997)(*en banc*)(internal citation and quotation marks omitted), cert. denied, 522 U.S. 1075 (1998).  "In order to defeat summary judgment . . ., the plaintiff's admissible evidence must show circumstances that would be sufficient to permit a rational finder of fact to infer that the defendant's employment decision was more likely than not based in whole or in part on discrimination."  Stern v. Trustees of Columbia Univ. in the City of N.Y., 131 F. 3d 305, 312 (2d Cir.1997).  Thus, the ultimate burden of persuasion remains always with Plaintiff.  St. Mary's Honor Ctr., 509 U.S. at 507, 511.  In

13

determining whether Plaintiff can satisfy this ultimate burden, the Court must examine the entire record and apply "a case-by-case approach." Schnabel v. Abramson, 232 F.3d 83, 90 (2d Cir. 2000).

Assuming, arguendo, that Plaintiff is able to establish a *prima facie* case,[6] the undisputed evidence shows that Defendants terminated Plaintiff due to a lack of funding for his position and specialized research.  See Def. Ex. "C"; Singer Aff. ¶¶ 60-68, 79; Jourd'heuil Aff. ¶ 93.  This constitutes a legitimate, nondiscriminatory justifications for the adverse action in issue in this case. See Turner v. NYU Hosp. Ctr., 2012 U.S. App. LEXIS 6552, *3-4 (2d Cir. 2012)(attached to Defendants' motion) (finding employer's reason for terminating plaintiff as part of a hospital-wide effort to reduce all departments' personnel budgets was a legitimate justification); Escribano v. Greater Hartford Acad. Arts, 2011 U.S. App. LEXIS 18754, **7-9 (2d Cir. 2011) (attached to Defendants' motion) (finding defendants presented sufficient evidence that plaintiff's position was cut due to budgetary constraints at the school, and thus had proffered a legitimate, nondiscriminatory reason for the employment action); Lalanne v. Begin Managed Programs, 2009 U.S. App. LEXIS 20853,*3 (2d Cir. 2009) (attached to Defendants' motion) (finding defendant's proffered reason for terminating plaintiff due to a cut in funding for his position was a legitimate nondiscriminatory reason).

This shifts the burden back to Plaintiff to present sufficient evidence from which a

---

[6]To establish a prima facie case of discrimination, Plaintiff must show: "(1) [he] is a member of a protected class; (2) [he] is qualified for [his] position; (3) [he] suffered an adverse employment action; and (4) circumstances give rise to an inference of discrimination." Lore v. City of Syracuse, 583 F. Supp.2d 345, 361 (N.D.N.Y. 2008) (quoting Weinstock v. Columbia Univ., 224 F.3d 33, 41 (2d Cir. 2000)).

reasonable fact finder could conclude that consideration of Plaintiff's race was a motivating factor in the employer's decision.  Plaintiff has not met this burden.  Plaintiff points to inadmissible hearsay in support of his belief that AMC had sufficient funds to continue his position, but hearsay is insufficient to create a question of fact on a summary judgment motion.  See Fed. R. Civ. P. 56(c)(4).  Further, the undisputed evidence shows the research Plaintiff was performing in Dr. Jourd'heuil's lab remains unfinished and no one has been hired to replace him due to the lack of funding for the research, nor has anyone been hired in Dr. Singer's lab to perform the animal surgeries Plaintiff was performing. SOF. ¶¶ 39-40.  Plaintiff has also failed to present admissible evidence demonstrating that he applied for and was rejected for other position for which he was qualified to perform, or that similarly situated senior post-doctoral fellows had their contracts extended.

Moreover, the fact that the same actors made the decision to hire and fire Plaintiff strongly undermines any claim that Defendants' proffered reason for discharging Plaintiff was a pretext for discrimination.  See, e.g., Jetter v. Knothe Corp., 324 F.3d 73, 76 (2d Cir. 2003);[7] Carlton v. Mystic Trans., Inc., 202 F.3d 129, 137 (2d Cir. 2000),[8] cert. denied, 530 U.S. 1261, 120 S.Ct. 2718, 147 L.Ed.2d 983 (2000).  Here, the undisputed evidence shows that Drs. Singer and Jourd'heuil collectively made the decisions to both hire and

---

[7]("[W]hen the person who made the decision to fire was the same person who made the decision to hire, especially when the firing occurred only a short time after the hiring, it is difficult to impute [to the decisionmaker] an invidious firing motivation that would be inconsistent with [the] decision to hire.")

[8]("When the same actor hires a person already within the protected class, and then later fires that same person, it is difficult to impute to her an invidious motivation that would be inconsistent with the decision to hire. . . . Case law teaches that where the termination occurs within a relatively short time after the hiring there is a strong inference that discrimination was not a motivating factor in the employment decision.") (internal quotation marks and citations omitted).

terminate Plaintiff within one year after his employment at AMC began. SOF ¶¶ 5-6, 37. Both Dr. Singer and Dr. Jourd'heuil were aware of Plaintiff's Syrian national origin at the time he was hired, which did not change at the time he was terminated. SOF ¶¶ 7-8. Thus, because Plaintiff was already in the protected class when he was hired, and because the hiring and firing took place within a relatively short time, there is a strong inference that discrimination was not a motivating factor in the employment determination.

As indicated above, a party opposing a properly supported motion for summary judgment may not rest upon "mere allegations or denials" asserted in the pleadings, Rexnord Holdings, 21 F.3d at 525-26, or on conclusory allegations or unsubstantiated speculation. Scotto, 143 F.3d at 114. Yet, this is what Plaintiff's case seemingly relies upon. Plaintiff has failed to present sufficient evidence from which a reasonable fact finder could conclude that his contract was not renewed because of his national origin, and his own conclusions that he was discriminated in this regard are insufficient to withstand summary judgment. See Bickerstaff v. Vassar College, 196 F.3d 435, 456 (2d Cir. 1999);[9] id. at 448;[10] Richardson v. N.Y. Dep't. of Correctional Serv., 180 F.3d 426, 447 (2d Cir.

---

[9] (Plaintiff's "feelings and perceptions of being discriminated against are not evidence of discrimination.")

[10] As indicated in Bickerstaff, on a motion for summary judgment the Court:

> must also carefully distinguish between evidence that allows for a reasonable inference of discrimination and evidence that gives rise to mere speculation and conjecture.   This undertaking is not one of guesswork or theorization.   After all, an inference is not a suspicion or a guess.   It is a reasoned, logical decision to conclude that a disputed fact exists on the basis of another fact that is known to exist. Thus, the question is whether the evidence can reasonably and logically give rise to an inference of discrimination under all of the circumstances.

Bickerstaff, 196 F.3d at 448 (internal quotation marks and citations omitted).

16

1999).[11]  Therefore, Plaintiff's claim of wrongful termination is dismissed.

### d.  Plaintiff's Other Claims of National Origin Discrimination

Plaintiff further alleges that Defendants discriminated against him by failing to publish his manuscript, failing to submit his grant application, failing to assign him work from ongoing projects in the lab, stealing tissue samples he generated, and assigning him work that was beneath him. Am. Compl. ¶¶ 18-20, 23, 28, 31, 39.  These Title VII national origin discrimination claims are also analyzed under the three-step McDonnell Douglas burden-shifting framework outlined above. See, e.g., Zhou v. SUNY Inst. of Tech., 2011 U.S. Dist. LEXIS 104025, *20 (N.D.N.Y. 2011) (attached to Defendants' motion) (citing Farias v. Instructional Sys., Inc., 259 F.3d 91, 98 (2d Cir. 2001)).

Assuming, arguendo, that Plaintiff can establish a prima facie case of discrimination based upon these allegations, which Defendants argue he has not, Defendants have offered legitimate, nondiscriminatory reasons for the actions and Plaintiff has failed to present admissible evidence from which a reasonable fact finder could conclude that these reasons were pretexts for unlawful discrimination, or that considerations of Plaintiff's national origin motivated the decisions.

Regarding the manuscript, the undisputed evidence shows that Defendants aided Plaintiff in this endeavor but decided not to submit his manuscript for publication because of its poor written quality and deficient scientific data. SOF ¶¶ 27-30.  Courts ordinarily defer to a defendant's professional judgment on decisions regarding the substance and quality of a professional work product, see Byrne v. Telesector Res. Group, 2009 U.S.

---

[11](affirming summary judgment for employer where employee offered only her own general claim of discrimination to show that the employer's legitimate reason for terminating her was pretextual).

App. LEXIS 15493, **7 (2d Cir. 2009) (citations and quotations omitted) (attached to Defendants' motion) (if defendants' proffered reason is non-discriminatory, the court should not "second-guess" the employer's business judgment) (citations omitted); see also Tori v. Marist College, 2009 U.S. App. LEXIS 19755, **7 (2d Cir. 2009) (attached to Defendants' motion) (citations and quotations omitted) ("triers of fact cannot hope to master the academic field sufficiently to review the . . . differences of scholarly opinion"), and Plaintiff offers nothing more than his own conjecture that the decision not to publish the manuscript was motivated by consideration of his national origin.  As discussed above, this is insufficient to withstand summary judgment.  The claim in this regard is dismissed.

Regarding Plaintiff's claim that the Defendants discriminated against him by failing to submit his grant, Plaintiff admitted at his deposition that he never submitted a completed grant application. Alzawahra Dep. at 307.  Plaintiff cannot maintain a claim against Defendants based on Plaintiff's own conduct. Thus, the claim is dismissed.

Plaintiff also claims that he was not assigned work from ongoing projects in the lab because of his national origin.  However, the undisputed evidence establishes that Plaintiff was treated like any other post-doctoral fellow and was consistently assigned work appropriate for his level of experience and unique area of expertise.  Jourd'heuil Aff. ¶¶ 26-34, 37, 41; Alzawahra Dep. at 140-41, 220, 224-25; Def. Ex. "R;" Def. Ex. "Q."  Despite Plaintiff's claims that he was denied an opportunity to work on Dr. Jourd'heuil's cytoglobin project, Plaintiff expressly admitted at his deposition that he did in fact work on this project. Alzawahra Dep. at 220, 224-25; Def. Ex. "R."  Further, the evidence demonstrates that Plaintiff was not assigned to be a "technician" for Ms. Halligan (Am. Compl. 19, 23),

but was simply expected to work collaboratively with her as well as other researchers in

the Center. Jourd'heuil Aff. ¶¶ 10, 22, 43; Def. Ex. "N."   As Defendants explain, Plaintiff

was a post-doctoral fellow, not a Principal Investigator ("PI").  He had to work under the

PIs in support of the PI's research aims and was therefore not free to research

independently. Singer Aff. ¶¶ 45-46; Alzawahra Dep. at 144.  Plaintiff's perception that this

structure was discriminatory is alone insufficient to raise a genuine issue of fact.

Moreover, the undisputed evidence establishes that when Plaintiff was not

assigned to work on a project, it was because Dr. Jourd'heuil determined that another

researcher was more qualified based upon their experience and expertise. Jourd'heuil Aff.

¶¶ 26, 34-39.  This constitutes a legitimate, nondiscriminatory basis to allocate work.

Because Plaintiff has offered no specific facts or evidence that would establish that he had

the requisite qualifications, educational background, or experience to lead projects that

were not assigned to him,[12] he fails to raise a genuine issue of fact as to whether

Defendants' legitimate nondiscriminatory reasons for work allocation were actually

pretexts for unlawful discrimination.  Thus, Plaintiff's claim in this regard is dismissed.

Regarding Plaintiff's claims that Defendants discriminated against him because of

his national origin by stealing tissue samples he generated, Plaintiff admitted at his

deposition that when the samples were used by another lab in connection with a

publication, he was named as a co-author (Alzawahra Dep. at 238-39) and that he does

not "have any complaints" about this (Alzawahra Dep. at 236).  Plaintiff provides no other

proof that the tissue samples were "stolen," or any basis upon which a fact finder could

---

[12]To the contrary, Plaintiff admitted at his deposition, he was "not that sophisticated" in basic cellular and molecular biology. Alzawahra Dep. at 365-66.

conclude that any misappropriation of the tissue samples occurred because of consideration of Plaintiff's national origin.  The claim is dismissed.

### e.  Hostile Work Environment Claim

Plaintiff also alleges claims of hostile work environment under Title VII, contending that he was harassed because of his national origin. To establish a claim of hostile work environment, a plaintiff must prove that the workplace was permeated with discriminatory intimidation, ridicule, and insult that was sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment. Clark County School District v. Breeden, 532 U.S. 268, 270 (2001); Harris v. Forklift Sys., 510 U.S. 17, 21 (1993); Quinn v. Green Tree Credit Corp., 159 F .3d 759 (2d Cir.1998).  A "hostile work environment claim will succeed only where the conduct at issue is so 'severe and pervasive' as to create an 'objectively hostile or abusive work environment,' and where the victim 'subjectively perceive[s] the environment to be abusive.'" Richardson v. N.Y. State Dep't. of Correctional Serv., 180 F.3d 426, 436 (2d Cir. 1999), abrogated on other grounds by Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 126 S. Ct. 2405, 165 L. Ed.2d 345 (2006)(quoting Harris, 510 U.S. at 21-22).  The objective aspect of this test is judged by a reasonable person standard. Id.  To analyze a hostile work environment claim, the Court "must look to the record as a whole and assess the totality of the circumstances, considering a variety of factors including 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" Gorzynski v. Jetblue Airways Corp., 596  F.3d 93, 102 (2d Cir. 2010)(quoting Harris, 510 U.S. at 23).

The Second Circuit has repeatedly held that "[i]solated, minor acts or occasional episodes do not warrant relief" under a hostile environment theory. Brennan v. Metropolitan Opera Assn, Inc., 192 F.3d 310, 318 (2d Cir. 1999)(citing Kotcher v. Rosa and Sullivan Appliance Ctr., Inc., 957 F.2d 59, 62 (2d Cir. 1992)). "Generally, unless an incident of harassment is sufficiently severe, 'incidents must be more than episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive.'" Gorzynski, 596 F.3d at 102 (quoting Alfano v. Costello, 294 F.3d 365, 374 (2d Cir. 2002)); see also Kaytor v. Elec. Boat Corp., 609 F.3d 537, 547 (2d Cir. 2010)("Isolated incidents ... will not suffice to establish a hostile work environment unless they are extraordinarily severe." ); Alfano, 294 F.3d at 376 ("the twelve incidents cited by [plaintiff], taken together, [we]re insufficient as a matter of law to meet the threshold of severity or pervasiveness required for a hostile work environment"); Williams v. Cnty. of Westchester, 171 F.3d 98, 100 (2d Cir. 1999) (plaintiff must show "more than a few isolated incidents" and that "evidence solely of sporadic" discrimination does not suffice) (quotation marks and citation omitted).

Plaintiff's hostile work environment claim rests primarily upon allegations of a few isolated incidents where his laboratory equipment was discovered to be broken or missing. These incidents were neither severe nor pervasive, and the undisputed evidence demonstrates that the frequency of the mishaps occurring to Plaintiff's experiments was no more than occurred for others and typical for the types of experiments being performed. SOF ¶ 56. Moreover, all broken or missing lab equipment was promptly replaced or repaired and Plaintiff was able to timely complete his assignments. SOF ¶ 57. Plaintiff never identified what caused the incidents or who was responsible and

21

acknowledged the incidents could have been merely accidental. SOF ¶¶ 58-61.

Plaintiff also alleges that he was harassed when Dr. Jourd'heuil purportedly advised him "not to go to an Arabic church" (Am. Compl. ¶ 49), which Dr. Jourd'heuil denies. Jourd'heuil Aff. ¶¶ 63-64.  Even assuming this statement was made, courts have consistently found that a racially harassing comment is only sufficient to demonstrate a hostile work environment when it is part of a "stream of racially offensive comments," including a "veritable barrage of racial epithets." Whidbee v. Garzarelli Food Specialties, Inc., 223 F.3d 62, 70 (2d Cir. 2000), cert. denied, 537 U.S. 1089, 123 S. Ct. 702 (2002), rehearing denied, 537 U.S. 1228, 123 S. Ct. 1345 (2003); see also Fleming v. Maxmara USA, Inc., 2010 U.S. App. LEXIS 6134, **6-7 (2d Cir. 2010) (attached to Defendants' moving papers) (holding that plaintiff failed to state a hostile work environment claim based upon a single racial comment); Schwapp v. Town of Avon, 118 F.3d 106, 110 (2d Cir. 1997) (finding racist comments, slurs, and jokes constitute a hostile work environment only where there are "more than a few isolated incidents of racial enmity"). Plaintiff has offered nothing more than a single comment that is only arguably and loosely connected to his national origin, which alone falls far short of the "veritable barrage of racial epithets" necessary to establish a hostile work environment, and is not severe enough to be actionable.

Similarly, Plaintiff's allegations concerning a flat tire in the AMC parking garage, a piece of raw meat found at the front door of his home, and several hang-up phone calls from unknown callers fail to establish an actionable claim.   These events did not occur within the workplace, and Plaintiff admitted at his deposition that he does not know who is responsible for these incidents and does not have any basis to believe someone from

22

AMC is responsible. SOF ¶ 62.   For these reasons alone, the hostile work environment claim is subject to dismissal.

Further, to establish an actionable hostile work environment claim, Plaintiff must demonstrate the conduct occurred because of his race and/or national origin. See, e.g., Das v. Consol. Sch. Dist. of New Britain, 2010 U.S. App. LEXIS 5071, **8 (2d Cir. 2010) (attached to Defendants' moving papers)(citations omitted); Alfano, 294 F.3d at 374.  He has not done this.  Facially-neutral incidents may only be considered among the "totality of circumstances" in evaluating a hostile work environment claim if there is "some circumstantial or other basis for inferring that [these] incidents . . . were, in fact, discriminatory." Alfano, 294 F.3d at 378.  While Plaintiff points to Dr. Jourd'heuil's purported advice "not to go to an Arabic church," Plaintiff offers no other evidence from which a reasonable act finder could conclude that the alleged harassing conduct occurred because of his national origin. Indeed, Plaintiff admitted at his deposition that he cannot identify who is responsible for the issues with the equipment in the laboratories, or what caused them. Alzawahra Dep. at 245- 48, 258-63, 268-69, 271-72, 275, 280-82.  Plaintiff admitted that the lab equipment that had broken was fragile and could easily be broken accidentally and the equipment that was lost was very lightweight and could be easily misplaced. Alzawahra Dep. at 265, 268, 270-73.  As for the flat tire and other strange occurrences at his home, Plaintiff admitted that he has no basis to believe that anyone from AMC had any connection to or responsibility for these incidents. Alzawahra Dep. at 359-62.  Without some evidence tying the alleged course of harassment to Dr. Jourd'heuil, the only person who made any statement arguably exhibiting animosity toward Plaintiff's Syrian national origin, a reasonable fact finder could not conclude that the alleged

23

harassment was motivated by consideration of Plaintiff's national origin.  Thus, the claim is subject to dismissal on this basis.

Finally, Plaintiff admitted at his deposition that he never made any complaints of discrimination or harassment based upon his national origin, despite receipt and knowledge of this policy and reporting procedure. SOF ¶ 22; Alzawahra Dep. at 110-13. Therefore, even assuming the harassment was perpetrated by a supervisor, liability cannot be imputed to AMC.  Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 765, 118 S. Ct. 2257, 2270 (1998);  Faragher v. City of Boca Raton, 524 U.S. 775, 807, 118 S. Ct. 2275, 2293 (1998).

Based upon these reasons, Plaintiff's hostile work environment claim is dismissed.

**f.  Retaliation by Negative Employment Reference**

Reading Plaintiff's Amended Complaint liberally and to raise the strongest legal claims it suggests, Plaintiff may be asserting a claim of retaliation by way of negative employment references.  See Am. Comp. ¶ 61.  To establish a retaliation claim based on a negative employment reference, a plaintiff must first prove that a "*false* statement negatively affected [the plaintiff's] chances of securing employment." Jute v. Hamilton Sundstrand Corp., 420 F.3d 166, 178-79 (2d Cir. 2005) (emphasis in original); see Abreu v. New York City Police Dept., 329 Fed. Appx. 296, 298, 2009 WL 835072, at * 1 (2d Cir. March 31, 2009).[13]   Here, the undisputed evidence is that Defendants did not provide any employment references for Plaintiff.  Consequently, he cannot establish the essential element of such a claim.  Any such retaliation claim contained in the Amended Complaint

---

[13]("First, [plaintiff] cannot show that he suffered an adverse employment action, as he failed to prove that any of [his Lieutenant's] statements impacted his ability to secure subsequent work.")

is dismissed.

## V.      CONCLUSION

For the reasons discussed above, Defendants' motion for summary judgment [dkt.

# 23] is **GRANTED** and the Amended Complaint is **DISMISSED** in its entirety.  The Clerk

of the Court is instructed to mark this case as closed.

**IT IS SO ORDERED**

**Dated:**  October 31, 2012

Thomas J. McAvoy
Senior, U.S. District Judge